UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

IN RE:

Matthew J. Parmely,

　　　　　Debtor

Chapter 12

Bankruptcy No. 23-00362

## OPINION AND ORDER ON CREDITOR'S MOTION FOR PAYMENT OF PAST DUE RENT AND DEBTOR'S MOTION TO USE CASH COLLATERAL

The matters before the Court are BankIowa's Motion for Payment of Past Due Rent (Doc. 115) and Debtor's Motion to Use Cash Collateral (Doc. 126). The Court held a telephonic hearing on July 12, 2024, and the parties stipulated that no formal evidentiary hearing was needed and relied on their filings. The Court heard argument and took the matter under advisement on the papers submitted. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### STATEMENT OF THE CASE

Debtor filed a Chapter 12 Petition on May 4, 2023. Debtor's Third Modified Chapter 12 Plan was confirmed on April 19, 2024. Just before plan confirmation, BankIowa filed a Motion for Payment of Past Due Rent on April 9, 2024. Debtor filed a response to BankIowa's Motion and then filed his own Motion to Use Cash Collateral on April 22, 2024. BankIowa filed an Objection to the Motion to Use Cash

Collateral on April 23, 2024, and a Supplemental Objection to the Motion to Use
Cash Collateral on July 12, 2024. For the reasons that follow, the Court denies
BankIowa's Motion for Payment of Past Due Rent and grants Debtor's Motion to
Use Cash Collateral.

### FINDINGS OF FACT

Debtor is a family farmer in Buchanan County, Iowa. Since he filed Chapter
12, Debtor has continued to manage his farming operation as debtor in possession
under 11 U.S.C. § 1203. BankIowa provided pre-petition financing for the farming
operation and holds a secured claim in the amount of $3,557,566.97. Debtor's
Schedules show assets valued at over $3.7 million.

The Bank's claim is secured by a number of mortgages on Debtor's real estate
and liens on Debtor's machinery and equipment. The mortgages contain assignment
clauses, which purport to "assign[] … as additional security all the right, title and
interest in … [r]ents, issues and profits." The agreement further provides:

> Mortgagor may collect, receive, enjoy and use the rents so long as
> Mortgagor is not in default. Upon default, Mortgagor will receive any
> Rents in trust for Lender and Mortgagor will not commingle the Rents
> with any other funds. When Lender so directs, Mortgagor will endorse
> and deliver any payments of Rents from the Property to Lender.

Debtor entered into farm leases with his son, Ryan Parmely, for years 2022
and 2023. The lease for 2022 required Ryan to pay Debtor $300 per acre on 212 acres
of land, due after the fall harvest. The 2023 lease appears to encompass the same

land at $260 per acre, payable after the fall harvest. At the time Debtor filed his petition, he had not received payment on either lease. Debtor later disclosed in his January 2024 Chapter 12 Monthly Report that he had received a $65,000 deposit— the 2022 lease payment from Ryan Parmely. Debtor filed his Third Pre-Confirmation Modified Plan on March 29, 2024. BankIowa did not object, but instead filed a Motion for Payment of Past Due Rent.

Debtor's Chapter 12 Plan was confirmed without objection before BankIowa's Motion was heard. The Plan treats BankIowa's claim in section 3.04, which provides that Debtor will make payments to BankIowa as follows:

(a) [BankIowa] shall receive the net sales proceeds on the sale of any real estate, machinery and equipment, and shall retain its lien rights in said real estate, machinery and equipment, and shall maintain a replacement lien in all sale proceeds subject to any formal motion to avoid lien filed with the court.

(b) Prior to the sale of any land, the Debtor shall make quarterly payments to BankIowa in the amount of $10,500 per quarter, beginning January 1, 2024, and continuing on the first day of each quarterly month thereafter until a land sale has been completed.

(c) Upon the completed sale of approximately 219 acres of tillable farm ground, and the additional sale of approximately 16 acres of predominantly pasture ground, the sale proceeds from these sales shall be paid to BankIowa for payment on its loans, paying loans with the highest interest rates first, followed by loans with lower interest rates. … The balance of the debt owed to BankIowa shall be calculated, with unpaid interest tacked on to the end of the loan, and the loan shall be extended and amortized over 20 years at a rate equal to the 20 year Treasury rate plus two percent, and paid in equal monthly amounts. The quarterly payments established herein shall cease upon the sale of any land, and will be replaced by monthly payments upon the sale of 235 acres (more or less). BankIowa shall retain its lien on Debtor's property while this loan remains unpaid. Except for the payment terms stated in this Section, the terms and conditions of the Promissory Notes and the Mortgages signed by the Debtor with respect to [BankIowa's claim] shall remain unchanged.

3

The plan also provides that "BankIowa shall retain the right to collect all rent for the 2024 crop year. The claim to past due or previously paid rent for the 2022 and 2023 crop year is in dispute." Further, "[t]o the extent that Debtor's farm rent payments from his tenant are secured by BankIowa, BankIowa shall maintain a lien on rent payments, and shall be entitled to turnover of all rent from Tenant, subject to Debtor filing a Motion to Use Cash Collateral." Article V of the Plan states that "[t]he rent received from any lease shall be available for use by Debtor in its ongoing operation until land is sold." Article VI states that "farm lease income from a farm lease with Ryan Parmely is included in [the income to fund this plan]. Income from this lease is included in Debtor's income schedules and shall be used to fund this plan and make it feasible."

Debtor's Motion to Use Cash Collateral was filed after confirmation, but before a hearing on BankIowa's Motion for Payment of Past Due Rent. Debtor seeks to use farm rental income to pay plan payments, living expenses, and to continue farming operations. He asserts that he is unable to obtain credit on an unsecured basis despite attempts to do so. Debtor has offered, as adequate protection of BankIowa's interest, "a first security interest in post-petition rent and farm proceeds, and a mortgage in any remaining land owned by Debtor." He also notes in his Motion that the "confirmed plan also contemplates that Debtor liquidate 235 acres of farm ground with all net proceeds paid to Bank Iowa."

BankIowa argues that this is insufficient to establish adequate protection. It points out that Debtor intends to sell his farmland, making Debtor's offer to grant BankIowa a security interest in future rent and farm proceeds, as well as a mortgage in any remaining land, insufficient to adequately protect the Bank's interest. BankIowa urges the Court to deny the cash collateral motion and grant its Motion for Payment of Past Due Rent. Both Debtor and BankIowa agreed that no evidentiary hearing was necessary, and the Court took the motions under advisement after argument.

## DISCUSSION

"The provisions of a confirmed plan bind all parties whose rights are affected by the plan." In re Gross, 1988 WL 1571418, at *3 (Bankr. S.D. Iowa May 27, 1988) (citations omitted); 11 U.S.C. § 1227(a). See also Schellhorn v. Farmers Sav. Bank (In re Schellhorn), 280 B.R. 847, 853 (Bankr. N.D. Iowa 2002) (citing First Nat'l Bank v. Allen, 118 F.3d 1289, 1294 (8th Cir. 1997)).   Here, Debtor's Plan was confirmed without objection and its provisions control. The Plan addresses the rent payments at issue here in several different provisions. The Plan notes that the entitlement to rent has been disputed by the parties, but then specifically states that the rent will be available to fund the plan and Debtor's operations until a sale is made.

The motions before the Court arise in the context of—and are controlled by—these plan provisions. BankIowa's Motion for Payment of Past Due Rent—filed after the Plan was filed, and just before confirmation—was largely mooted by the Plan's confirmation. None of BankIowa's arguments address the Plan provisions, including the provisions that give Debtor the right to use the rent to make payments up to the time of the sale. The binding terms of the Plan control and BankIowa's motion must be denied. See In re Gross, at *3–5 (discussing binding effect of plan on similar issue).

Debtor's Motion to Use Cash Collateral, filed after plan confirmation, presents a slightly different situation, but is still largely controlled by the Plan. Debtor seeks permission to use the rent to continue to fund the Plan for the present 2024 rent year. BankIowa's resistance largely argues that the Court should deny the motion because the Bank is not receiving adequate protection.

A debtor in possession may not use cash collateral unless the secured creditor consents or the court authorizes the use of the cash collateral. 11 U.S.C. § 363(c)(2). On request of an interested party, the court must prohibit or condition a debtor's use of cash collateral "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). In a Chapter 12 case, adequate protection may consist of cash payments to the secured creditor, additional or replacement liens, rental payments for the use of farmland, or "such other relief … as will adequately protect the value

6

of the property securing a claim or of such entity's ownership interest in property."

11 U.S.C. § 1205(b)(1)–(4).

The parties frame the issues in this case as dealing with adequate protection of the Bank's interest in the cash collateral. However, adequate protection is normally applicable to the interest of a creditor pre-confirmation and at confirmation; it does not apply to the interest of the creditor post-confirmation. In re Wilson, 378 B.R. 862, 889 (Bankr. D. Montana 2007) (citing In re Monnier Brothers, 755 F.2d 1336 at 1340, 1341 (8th Cir. 1985)). Again, once a Chapter 12 plan has been confirmed, its provisions are binding on the debtor and each creditor. In re Schellhorn, 280 B.R. at 853; 11 U.S.C. § 1227(a)). The Eighth Circuit has observed that "confirmation requirements of 1225(a) implicitly embody the concept of adequate protection for a secured creditor's claim." In re Hanna, 912 F.2d 945, 951 (8th Cir. 1990). "[T]he requirement of adequate protection is also contained in § 1225(a)(5)(B)(ii) and §1225(a)(6), which require the secured creditor receive payments under the plan at least equal to the present value of its claim and that the debtor will be able to make all those payments." Id. (citing In re Adam, 92 B.R. 732, 735 (Bankr. E.D. Mich. 1988)). See also In re Turner, 82 B.R. 465, 468 (Bankr. W.D. Tenn. 1988) ("[T]he Code contemplates that the creditor will receive a value, as of the effective date of the plan, not less than the allowed amount of a secured creditor's claim."). "Moreover, if a secured creditor does not object to the plan, the creditor is

deemed to have accepted the adequate protection provided by the plan." 8 Collier on

Bankruptcy ¶ 1325.06[3][b][ii][B] (Richard Levin & Henry J. Sommer eds., 16th ed.)

(citing <u>Bronitsky v. Bea</u> (<u>In re Bea</u>), 533 B.R. 283 (B.A.P. 9th Cir. 2015)).[1] Absent a

default under the plan, a secured creditor cannot assert a post-confirmation claim for

adequate protection. <u>Salt Creek Valley Bank v. Wellman</u> (<u>In re Wellman</u>), 322 B.R.

298, 301 (B.A.P. 6th Cir. 2004).

This case is very similar to <u>In re Gross</u>, 1988 WL 1571418 (Bankr. S.D. Iowa

May 27, 1988). In that case, the Debtor, a hog farmer, granted the bank a security

interest in all equipment and farm products as collateral for his indebtedness. <u>Id.</u> at

*1. The bank later closed, and the FDIC purchased the bank's rights with respect to

the property of the debtor's estate. <u>Id.</u> When the time came for plan confirmation,

the FDIC did not object, and the debtor's plan was confirmed. <u>Id.</u> The confirmed

plan granted the debtor "full authority to sell and use property of the estate." <u>Id.</u> at

*2. The plan "contained no provisions concerning adequate protection payments to

FDIC for the use of its cash collateral and equipment by [d]ebtor." <u>Id.</u> The FDIC

later filed a motion for adequate protection, arguing it was entitled to payments for

the unauthorized use of its cash collateral and equipment. <u>Id.</u> In ruling on the FDIC's

motion, the court made clear that "the provisions of a confirmed plan bind all parties

---

[1] "Because chapter 12 was modeled on chapter 13, and because so many of the provisions are identical, chapter 13 cases construing provisions corresponding to chapter 12 provisions may be relied on as authority in chapter 12 cases." 8 Collier ¶ 1200.01[5], at 1200–10; <u>Hall v. United States</u>, 566 U.S. 506, 516 (2012).

whose rights are affected by the plan,"—including issues of adequate protection. Id.

at *3.

> In Debtor's plan, paragraph 3.03 gave Debtor full authority to sell and use property of the estate. … FDIC did not object to these provisions in either the original or the amended plan. Thus, Debtor's post-confirmation use of cash collateral and equipment was authorized by the terms of the plan.
>
> Concerning adequate protection for Debtor's post-confirmation use of FDIC's cash collateral and equipment, section 363 does not apply after a Chapter 11 plan is confirmed. Furthermore, as noted above, the provisions of a confirmed plan bind all parties. There is no provision in Debtor's confirmed plan providing adequate protection payments to FDIC for post-confirmation use of its cash collateral and equipment. Therefore, since the adequate protection requirements of section 363(e) are no longer applicable, and since Debtor's confirmed plan does not provide for post-confirmation adequate protection, FDIC is not entitled to any post-confirmation adequate protection.

Id. at *3–5. This holding is consistent with other more recent cases. See Bullard v.

Blue Hills Bank, 575 U.S. 496, 502 (2015) ("Confirmation has a preclusive effect,

foreclosing relitigation of 'any issue actually litigated by the parties and any issue

necessarily determined by the confirmation order.'"); In re Schellhorn, 280 B.R. at

852 ("A confirmed plan is a binding contract and res judicata to all issues decided.");

Matter of Flores, 649 B.R. 534, 538 (Bankr. N.D. Ind. 2023) ("After confirmation,

the plan defines the rights of creditors and the responsibilities of the debtor and 'all

rights and remedies must be determined with reference to the plan.'") (citing In re

Van, 612 B.R. 893, 901 (Bankr. N.D. Ill. 2020)).

9

The Debtor's Third Modified Chapter 12 Plan was confirmed in this case on April 19, 2024. No objection to confirmation was filed by any party. BankIowa had previously objected to the confirmation of an earlier version of the Plan, but those objections appear to have been resolved by the Plan's modification. Multiple Plan provisions support the Debtor's proposed use of the Bank's cash collateral. BankIowa, through its failure to object to the Plan's confirmation, has accepted the adequate protection provided in the Plan. BankIowa is to receive quarterly payments pending the sale of farmland, all proceeds from the sale of said farmland, and monthly payments thereafter. The Bank retains all of its interests set forth in the Plan, and the Plan provides for payment in full of the Bank's $3.5 million claim.

BankIowa's adequate protection arguments here deal with issues covered in the confirmed Plan. The Bank, for example, argues that the sale is already insufficient to protect the Bank's position going forward. The Bank asserts that Debtor's use of the rent until the sale closes would further erode the Bank's overall security. The Bank then argues that the sale proceeds will be insufficient to reduce to remaining loan balance to an amount Debtor can feasibly pay over the life of the Plan. These issues were addressed in the Plan, and the Plan controls. If the Bank is ultimately correct—that the Debtor will be unable to service the remaining debt—the Bank will be able to move for dismissal of the case. Unless or until that occurs, the Plan allows for Debtor's proposed path forward on the issues before the Court.

The Court concludes that BankIowa is bound by the terms of the confirmed plan and that the amount, interest rate, timing, and source of the payments to BankIowa under the Plan provide any necessary adequate protection under the facts and circumstances of this case. Adequate protection would only become an issue again in the event that the Debtor defaults under the Plan.

## CONCLUSION AND ORDER

For the aforementioned reasons, the Court concludes that Debtor's use of BankIowa's cash collateral is authorized by the Debtor's confirmed Plan. Further, BankIowa is bound by the terms of the confirmed Plan and is not entitled to adequate protection beyond that which is contemplated in the Plan.

**IT IS HEREBY ORDERED**, that BankIowa's Motion for Payment of Past Due Rent is **DENIED**.

**FURTHER**, Debtor's Motion to Use Cash Collateral is **GRANTED**.

Ordered:
October 15, 2024

Thad J. Collins
Chief Bankruptcy Judge